In the matter of RUNEY DEY, alleged to be a Lunatic.

1. This court has the power of making a provisional order, to protect the lunatic's property, pending the proceedings under the commission. But there is no precedent for converting the petition into a bill in chancery, making a case against third persons, and in this way invoking the action of the court upon matters involving the right of others not parties to the proceedings.

2. Such practice is condemned.

3. But the court will not, for this reason, nor for defect or informality in the petition, set aside the proceedings, if it appears from them that the supposed lunatic is so indeed, and is entitled to the protection of this court, and he will be benefited by this court's interference.

4. Although the affidavits accompanying the petition do not come quite up to the requirements of the rule and practice of the court, the court will not, on this account, quash an inquisition by which the affidavits themselves were entirely confirmed.

5. On taking an inquisition, unlawful evidence was admitted, on exceptions duly made—declarations, not under oath, as to the state of mind of the alleged lunatic. But it appearing that a large number of witnesses had been examined; that the alleged lunatic was before the jury; that the investigation continued for five successive days, and that the defence had been conducted by able counsel, it was held that the court would not be justified in interfering with the proceedings, on account of the admission of this testimony, its character not being such as must *necessarily*, or *did probably*, influence the jury in their finding.

6. It is not a good ground for exception that "the infant children of the petitioner were, day by day, brought before the jury, and appeals, as from them and in their behalf, made to said jury by the counsel having the conduct of the suit or application."

7. No person can be deprived of the right to manage his own affairs, or of his personal liberty, without the intervention of a jury, and, in cases of lunacy, the verdict of the jury is to be founded, as in all other cases, upon satisfactory and unexceptionable evidence submitted to their consideration.

---

A writ *de lunatico inquirendo* was issued to inquire of the lunacy of Runey Dey. By the return, it appears that twenty-three jurors, all that were qualified, sat upon the inquisition, and, by their unanimous finding, declared Runey Dey a lunatic, and that his lunacy had existed for more than eighteen months prior to their finding.

On behalf of the lunatic a number of exceptions were filed to the proceedings. Sufficient of the case appears in

the opinion of the Chancellor to understand the principles involved and settled.

Argued at Trenton, May Term, 1852.

*Mr. Leupp*, on behalf of the lunatic, and in support of the exceptions filed, cited 2 *Law Lib.* 655 ; *Shelford on Lunacy* 171 ; *Potts' Forms* 171 ; *Saxton* 19 ; *Rogers' case*, 1 *Hal. Ch.* 49 ; 2 *Mad. Rep.* 729 ; *Tomlinson's case*, 18 *Ves., R. L.*, 552 ; 4 *Johns. Ch. Rep.* 169.

*Mr. Beasley, contra*, cited *Saxton's Ch. Rep.* 25 ; 2 *L. L.* 81 ; 1 *Johns. Ch. Rep.* 600, *In the matter of Wendell, a lunatic*.

THE CHANCELLOR.　On the petition of Emily Dey, the widow of a deceased son of the alleged lunatic, a writ *de lunatico inquirendo* was issued to inquire of the lunacy of Runey Dey. By the return, it appears that twenty-three jurors, all that were qualified, sat upon the inquisition, and, by their unanimous finding, declared Runey Dey a lunatic, and that his lunacy had existed for more than eighteen months prior to their finding. The alleged lunatic has, by his counsel, filed several exceptions to the proceedings. I will examine them in their order.

The first exception is, " For that the said petition is multifarious, and in the article of alleged lunacy is not sufficiently sustained by the affidavits thereto annexed."

The petition contains a prayer for an injunction against Richard Conover, to enjoin him from cutting down, selling and removing wood and timber upon a farm in the possession of the petitioner, and belonging to the alleged lunatic. The facts and circumstances are set forth in the petition as grounds for this application.

That the court has the power of making a provisional order to protect the lunatic's property pending the proceedings under the commission, I have no doubt. *Wendell's case*, 1 *J. C. R.* 600. *Shelford* 127 mentions several instances of the kind. In one case, after commission issued, the wife of

the supposed lunatic, and all other persons in whose custody or power the personal estate and effects of the lunatic were, were restrained from selling or disposing of the same. And in another case, where a petition for a commission only had been presented, certain parties were restrained from interfering in any manner with the concerns of the supposed lunatic. And even where a sale under execution of the effects of the lunatic is about to take place, the court will interfere if it is necessary and proper. But I can find no precedent for converting the petition into a bill in chancery, making a case against third persons, and in this way invoking the action of the court upon matters involving the rights of others not parties to the proceedings. I am not willing to approve this practice unless it can be shown that it has received the deliberate sanction of the court, and on that account should be considered settled.

But ought the court for this reason to set aside these proceedings? If it appears that Runey Dey is a lunatic, and is entitled to the protection of this court, who will be benefited by this court's interference for a defect or informality in the petition? Richard Conover, against whom the injunction was prayed, makes no complaint. If the finding of the jury is correct, the property was properly protected by the court, and the only objection is as to the manner in which that protection was afforded. The petition is in other respects formal, and in conformity to the practice of the court. As to the affidavits accompanying the petition. The affiants state that for the space of two years last past they have known, and been well acquainted, and frequently discoursed with Runey Dey—that within the space of two years last past, they have, by frequently observing the behavior, words and actions of the said Runey Dey, looked upon him to be a person deprived of his understanding and reason, in a very great degree. One of the affiants states that a short time ago, when visiting at his house, he saw him treated and led about like a child, and found him altogether unable to hold any rational conversation.

In the case of *Covenhoven, Saxton's Rep.* 19, the affidavits

were not as full as those annexed to this petition, and yet the Chancellor deemed them sufficient, and decided, I think, very properly, that if the affidavits did not come quite up to the requirements of the rule and practice of the court, he would not quash an inquisition by which the affidavits themselves are entirely confirmed.

The second exception likewise refers to the injunction issued upon the application of the petitioner, and is included in the remarks I have already made.

The third exception is, "that on taking of the said inquisition, unlawful evidence was admitted on exceptions thereto duly made, in that the declarations not under oath of Richard G. Conover, in said petition named, as to the state of mind of said Runey Dey were given in evidence, and also a written notice to quit the aforesaid premises served by said Conover on said petitioner."

The evidence as to the declarations of Richard G. Conover, was clearly illegal. If the court could see that illegal testimony of an important nature was taken before the inquest, and its character such as must necessarily, or did probably influence the jury in their finding, the proceedings ought not to be permitted to stand. In the case before us, the investigation was a thorough and protracted one. A large number of witnesses were examined—the alleged lunatic was before the jury—the investigation continued for five successive days—able counsel conducted the defence, and it is somewhat remarkable that the only evidence admitted to which exception was taken on account of illegality, was that embraced in this exception. I should not feel myself justified in interfering with those proceedings, on account of the admission of this testimony, because I do not consider that its character was such as to influence the jury in the result they reached.

The fourth exception is, that "the infant children of the petitioner were day by day brought before the jury, and appeals as from them and in their behalf made to said jury by the counsel having the conduct of the suit, or application."

It does not appear that any exception was taken to the presence of these children during the investigation, and if this was the most exceptionable matter, on the part of the counsel who conducted the case in the prosecution of the commission, there certainly cannot be much ground for dissatisfaction on the part of the lunatic as to the manner in which the commission has been executed. No complaint is made as to the conduct of the commissioners or the jury, and none, other than that referred to, as to that of counsel. The patience and fidelity of the commissioners and jury satisfy me that no misplaced sympathy for these children or others, has influenced them to the prejudice of the unfortunate individual whose rights and personal liberty were in a measure committed into their hands.

The fifth and last exception is, " Because the verdict of said jury was against the weight of testimony submitted to them."

No person can be deprived of the right to manage his own affairs or of his personal liberty, without the intervention of a jury ; and in cases of lunacy the verdict of the jury is to be founded, as in all other cases, upon satisfactory and unexceptionable evidence submitted to their consideration. I have examined the notes of the evidence taken by the counsel who conducted the case on behalf of the alleged lunatic, and which was agreed by counsel should govern me in my decision upon this exception. In examining this history of the trial, I was struck with the great patience, diligence and propriety with which the commissioners executed the trust reposed in them. I must confess the evidence does not make out, in my judgment, a very strong case. And yet I cannot say I am dissatisfied with the conclusion arrived at by the jury. In addition to this evidence which I have had the opportunity of examining, the jury had the alleged lunatic before them. They reached their conclusion without a dissenting voice, and nothing has since transpired tending to call in question the propriety of the inquisition.

I feel it my duty to make a decree confirming the proceedings.